UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

STEPHEN EASLEY,

                                        Plaintiff,

-vs-

CORRECTION OFFICER LOVERME,
CORRECTION OFFICER SLATE,

                                        Defendants.

_____

DECISION and
ORDER

18-CV-6326 CJS

INTRODUCTION

Stephen Easley ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. 1983 alleging that the defendants, Corrections Officer Loverme ("Loverme") and Corrections Officer Slate ("Slate") (together "Defendants"), violated his federal constitutional rights while he was a pre-trial detainee at the Chautauqua County Jail where Defendants were employed.  Now before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (ECF No. 10).  The application is granted, and this action is dismissed.

BACKGROUND

On April 30, 2018, Plaintiff filed the Complaint in this action, alleging that his constitutional rights had been violated at the Chautauqua County Jail where he was being held as a pretrial detainee.  The Complaint purported to assert various claims, only two of which remain pending in this action.

The first claim alleged that on September 5, 2017, Loverme violated Plaintiff's Fourteenth Amendment Due Process rights by being deliberately indifferent to Plaintiff's serious medical need.  In this regard, the narrative section of the Complaint described the

alleged incident as follows:

> On September 5th 2017 approx 2 am [,] I had a seizure and was denied medical attention.  The seizure happen[ed] after being exposed to diesel fumes from an outside generator all night.  I was left in urinated clothing for hours and unattended for an unknown amount of time while having the seizure even though I pre-warned the staff I was going into one.

Compl., Apr. 30, 2018, ECF No. 1 at p. 12.  Although this statement does not mention any particular jail staff, an exhibit attached to the Complaint indicates that Officer Loverme was the staff member to whom Plaintiff complained about the smell of diesel fumes.  The same exhibit further indicates that prior to the alleged seizure, Plaintiff had asked Loverme for medications (that had not been prescribed for him) and to be taken to the hospital.  The exhibit indicates that Loverme denied Plaintiff's requests, and that sometime later that morning, Loverme passed by Plaintiff's cell and observed Plaintiff lying on the floor in a puddle.  (Plaintiff maintains the liquid was urine, while jail staff maintain that it was water).  Loverme asked Plaintiff why he was lying on the floor, and Plaintiff stated that he had suffered a seizure.  Loverme notified his supervisor, Sergeant DeChard ("DeChard").  Upon DeChard's arrival, Plaintiff stated that he had suffered a seizure, and demanded a grievance complaint form.  DeChard, a "trained paramedic," offered to examine Plaintiff, but Plaintiff refused.[1]  The exhibit indicates that Plaintiff was taken to the booking area of the jail and given dry clothes to wear.

The second claim alleges that on October 30, 2017, Loverme and Slate failed to protect Plaintiff from a fellow inmate who had previously assaulted him at the jail.  Specifically, the Complaint states:

---

[1] ECF No. 1 at p. 16. (Page citations are to the ECF filing page number, which may not correlate to the page number written on the docketed submission).

> On September 22nd I was gang assaulted by 2 Bloods gang members [who] came into my cell as soon as the cell gates opened at 7:30 am and brutally attacked me.  A keep away [order] was put in place in [the] Jail to prevent future altercations at my request.  On October 30th 2017 it was overlooked and Kyle Kamholtz [("Kamholtz")] and friends were brought to an A.A. class I was attending and attacked me again.
>
> ***
>
> Officer Slate and Officer Loverme overlooked my keep away on October 30th 2017 placing me in danger from someone who had previously assaulted me.

Compl., ECF No. 1 at pp. 5–6.  Although, an exhibit attached to the Complaint indicates that Plaintiff was the aggressor during the incident on October 30th, and that he caused injury to another individual, presumably Kamholtz.  ECF No. 1 at p. 14.  Specifically, the exhibit, which was written by Jail Administrator James Crowell ("Crowell"), states:

> I have reviewed the incident that occurred on October 30th, 2017.  This incident was an extremely violent and unprovoked attack on another inmate.  You state that you were the aggressor because an opposing gang was present in greater numbers and you needed to strike first.
>
> Your judgment is flawed and your decision to attack was erroneous and caused great harm to another individual.  You had every opportunity to alert the officers that trouble was imminent before the door was closed. The officers would have protected you from your enemies and swiftly separated the groups.  Your intention to cause harm [was] clear and no others intervened on either behalf.

ECF No. 1 at p. 14.

When Plaintiff filed this action, he was still detained at the Chautauqua County Jail, and he moved for leave to proceed *in forma pauperis*.  The Court granted the application and, after screening the Complaint under 28 U.S.C. § § 1915(e)(2)(B) & 1915A(a), allowed the two aforementioned claims to go forward, namely: 1) a deliberate-indifference

3

medical claim against Loverme; and 2) a failure-to-protect claim against Loverme and Slate.   However, in doing so, the Court indicated that it was applying an extremely generous standard of review, and stated: "In allowing these claims to proceed and directing a response to them, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss[.]"[2]

On February 11, 2020, Defendants filed the subject motion to dismiss the Complaint pursuant to FRCP 12(b)(6).   Loverme maintains that the medical-deliberate-indifference claim is not actionable, for the following reasons:

> Plaintiff merely lists Officer Loverme as a Defendant but does not include any allegations against him. Plaintiff simply alleges that he had a seizure on September 5, 2017 and was left unattended for an unknown period of time. Plaintiff fails to allege that a medical professional ever diagnosed him as suffering from seizures. Plaintiff claims that he "pre-warned" staff he was going to have a seizure, but he does not specify who he warned. He also does not allege that he was ever denied medical treatment . . . . Notably, Plaintiff does not allege that he suffered any harm or injury as a result of this incident.

ECF No. 10-1 at p. 3 (citations to record omitted).   As for the failure-to-protect claim, Loverme and Slate maintain that it, too, is not actionable, stating:

> The details concerning the October 30, 2017 incident, which encompass Plaintiff's failure-to-protect claim, are quite sparse. Plaintiff alleges that on October 30, 2017, Officer Slate and Loverme "overlooked" a "keep away." Plaintiff does not allege any details concerning the "keep away," including whether the named Defendants were involved in obtaining the "keep away" or knew about it. It appears that Plaintiff allegedly obtained a "keep away" to prevent future altercations after he was allegedly assaulted by two gang members in September of 2017. However, Plaintiff fails to allege that the Defendants knew about the September 2017 incident. Nonetheless, Plaintiff claims one of these gang members attended the same "AA" class as Plaintiff on October 30, 2017, thereby placing Plaintiff in danger.   Plaintiff

---

[2] ECF No. 4 at p. 10, n. 4.

> alleges in a wholly conclusory fashion that he was attacked on October 30, 2017, but he does not allege that he suffered any injury. Plaintiff also fails to allege the named Defendants were even present when the October incident occurred.

ECF No. 10-1 at p. 4.  In the alternative, Defendants maintain that they are entitled to qualified immunity.

In opposition to Defendants' motion, Plaintiff asserts that his medical claim against Loverme is actionable, since Loverme acted with deliberate indifference

> by not contacting medical, but by also leaving Plaintiff unattended to for an unknown amount of time after being pre-warned that a serious medical, life threatening, event was about to happen (seizure) disregarding risk to inmate's health and safety.

ECF No. 13 at p. 3. Plaintiff further states that he asked Loverme "multiple times for medical attention, and medication." ECF No. 13 at p. 4.  Plaintiff states that he told Loverme the diesel fumes were giving him a migraine headache, and that he asked Loverme to call a nurse since he felt that he might have a seizure. ECF No. 13 at pp. 8-9.  Plaintiff states that Loverme refused to call a nurse or a doctor, and refused to close the window through which the fumes were coming from outside the building.  Plaintiff also states that he has "suffered from seizures since a youth,"[3] and contends that Loverme either knew or should have known about his condition, stating:

> [T]he Plaintiff's seizures are no secret and have been reported to Chautauqua County Jail, and in the inmate file and have been for years. The Defendant either knew of the seizures or should've know seeing as they are mentioned in the Plaintiff's inmate file.

ECF No. 13 at p. 9.  Plaintiff also indicates that he suffered some injury during his seizure,

---

[3] ECF No. 13 at p. 4.

even though the Complaint does not say so.  On this point, Plaintiff states that during the seizure he "hit his head," and that afterward he "was showing sure signs of a concussion."[4]  Plaintiff does not deny that Sergeant DeChard may be a paramedic or that DeChard offered to examine him following the alleged seizure, but contends that such fact is irrelevant since DeChard was not "hired" specifically as a medical provider at the jail.[5]

As for the failure to protect claim, Plaintiff contends that Loverme and Slate were the officers who escorted him to the A.A. meeting, and that they should have known about the "keep away" order, because such orders are on file and the prior incident involving Kamholtz had happened just one month earlier at the jail and would have been "well known."[6]  As for any injuries that he may have sustained, Plaintiff asserts that he sustained consequential injuries that were not listed in the Complaint, since he only discovered them later:

> Plaintiff's injuries were not named in full because they were not fully discovered until after submission of Plaintiff's claim,[7] such as loss of freedom, a felony conviction, surgery on my way [sic] left hand, limited mobility of said hand, depression, and an Attempted Assault 2d charge due to their *negligence*.

ECF No. 13 at p. 5 (emphasis added).  Plaintiff also suggests that Loverme may have had a motive to "overlook" the keep away order, since he may have been angry at Plaintiff about the prior medical incident.

---

[4] ECF No. 13 at p. 4.
[5] ECF No. 13 at p. 4.
[6] ECF No. 13 at p. 5.
[7] This assertion is odd, since the alleged failure-to-protect incident occurred on October 30, 2017, and Plaintiff did not file this action until more than a year later.

On April 30, 2020, Defendants filed a reply. (ECF No. 15). The Court has considered all of the parties' submissions.

ANALYSIS

<u>Plaintiff's *Pro Se* Status</u>

Plaintiff is proceeding *pro se*, and consequently the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

<u>Motions Under Rule 12(b)(6)</u>

The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

First, although a court must accept as true all of the allegations contained in a complaint,[8] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

---

[8] For example, for purposes of this Decision and Order, the Court will assume that Plaintiff actually experienced some type of "seizure," even though he cites no supporting medical evidence and even though the entire record arguably suggests that he staged the incident because he was unhappy about the smell of diesel fumes emanating from the outside generator.

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.' ") (quoting *Iqbal* ).

Section 1983

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted).

Deliberate Indifference to a Serious Medical Need

To state a 14th Amendment medical claim against Loverme, Plaintiff must plausibly plead two requirements: (1) that he had a serious medical need on September 5, 2017; and (2) that Loverme acted with deliberate indifference to such need. *See, Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019).  With regard to the first of these two requirements,

> [t]he serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain. In determining whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, we consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or

> injury inflicts chronic and substantial pain.  In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm.

*Charles v. Orange Cty.*, 925 F.3d at 86 (citations omitted).  As for the second requirement,

> deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind.
>
> ***
>
> A plaintiff can prove deliberate indifference by showing that the defendant official recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to the plaintiff's health or safety.
>
> ***
>
> A plaintiff must show something more than mere negligence to establish deliberate indifference in the Fourteenth Amendment context.  Thus, mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, *i.e.*, an act or a failure to act ... that evinces a conscious disregard of a substantial risk of serious harm.
>
> Thus, a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health.

*Charles v. Orange Cty.*, 925 F.3d at 86–87 (citations and internal quotation marks omitted).

Even though they lack medical training, non-medical personnel, such as corrections officers, may be liable for deliberate indifference to a serious medical need under certain circumstances. *See, Feliciano v. Anderson*, No. 15CV4106LTSJLC, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017) ("Non-medical personnel may, for example,

be deliberately indifferent if they delay access to medical care when the inmate is in extreme pain and has made his medical problems known to the attendant prison personnel.") (citation and internal quotation marks omitted); *Crandell v. Ross*, No. 19-CV-6552, 2020 WL 134576, at *4 (W.D.N.Y. Jan. 13, 2020) ("As a general matter, non-medical personnel may be liable for deliberate indifference to medical needs where a plaintiff demonstrates that such personnel intentionally denied or delayed access to medical care.") (citation omitted).

With regard to whether Plaintiff here has plausibly pleaded that he had a serious medical need, the Court notes, preliminarily, that Plaintiff characterizes his claim as one for "denial of adequate medical care," since he maintains that Loverme did nothing in response to his requests for medical assistance.  However, the subject claim is more properly characterized as "a temporary delay or interruption in the provision of otherwise adequate medical treatment," and accordingly the Court focuses "on the seriousness of the particular risk of harm that resulted from "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone":

> When a prisoner alleges denial of adequate medical care, we evaluate the seriousness of the prisoner's underlying medical condition. *Smith v. Carpenter*, 316 F.3d 178, 184–86 (2d Cir. 2003). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," we focus on the seriousness of the particular risk of harm that resulted from "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* at 185 (emphasis omitted).

*Bellotto v. Cty. of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007); *see also, Johnson v. Schiff*, No. 17-CV-8000 (KMK), 2019 WL 4688542, at *14 (S.D.N.Y. Sept. 26, 2019) ("[T]emporary delays ... [in] medical treatment have been found to satisfy the objective

seriousness requirement" only where "they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.").

In this regard, the Court assumes that Plaintiff in fact has an underlying diagnosed seizure disorder.  The Court further assumes that the risk of harm from failing to treat such condition *altogether* could be quite serious.  Here, though, Plaintiff merely alleges that Loverme delayed the receipt of treatment for a particular seizure episode on September 5, 2017, and he does not allege that he suffered serious harm as a result of the alleged delay.  Rather, he merely asserts, in response to Loverme's motion to dismiss, that, in addition to urinating on himself, he banged his head, presumably after falling to the floor, and subsequently had unspecified symptoms of a "concussion," though there is no mention of a head injury in the Complaint and no allegation anywhere that Plaintiff was actually ever diagnosed with a concussion.[9]  Further, it seems highly doubtful that Plaintiff sustained any serious injury during the alleged seizure, inasmuch as the first thing that he reportedly did upon Sergeant DeChard's arrival at his cell was to demand a grievance complaint form.  Consequently, the Complaint fails to plausibly plead the objective requirement of a medical-deliberate-indifference claim, since it merely describes a temporary delay of treatment that did not involve a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.

However, even assuming *arguendo* that Plaintiff has adequately pleaded that he had a medical condition that objectively posed a significant risk of serious harm, he has not plausibly alleged that Loverme was deliberately indifferent.   In this regard, liberally

---

[9] *See, Washington v. Monroe*, No. 16-CV-9090(NSR), 2019 WL 1130155, at *5 (S.D.N.Y. Mar. 12, 2019) ("Plaintiff, at best, states that as a result of being deprived of his medication, he suffered occasional headaches and minor pain. This does not rise to the level of harm required for deliberate indifference due to medical neglect.") (collecting cases).

construing the Complaint, Plaintiff told Loverme that fumes from the outside generator had given him a headache, and that he wanted medical attention because he felt that he might have a seizure.  The Complaint further indicates that some time after Loverme left the area,  Plaintiff had a seizure.  Consequently, when Loverme left the area of Plaintiff's cell, the occurrence of a seizure was merely speculative.  That is, Plaintiff was demanding medical attention because of the possibility that he would have a seizure in the future. Loverme's failure to act in that situation does not amount to deliberate indifference to a serious medical need. *See, e.g.*, *Patterson v. Lilley*, No. 02 CIV.6056 NRB, 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003) ("Nurse Eggler could only be held deliberately indifferent to an existing, serious medical condition, not a speculative, future medical injury."); *see also, Alston v. Bendheim*, 672 F. Supp. 2d 378, 386 (S.D.N.Y. 2009) ("A prison's medical staff, however, cannot be deliberately indifferent to wholly speculative medical conditions."); *Assenberg v. Whitman Cty.*, 730 F. App'x 429, 433–34 (9th Cir. 2018) ("Adam presented insufficient evidence to establish deliberate indifference . . . . Adam's assertion that he informed jail officials (before being jailed) that he "was really suffering" and "could go into a grand mal seizure," is (at best) only evidence he *could/might have a seizure*. He did not say he had been diagnosed with seizures in the past, that certain circumstances would precipitate seizures, or that he must have certain medication at certain times . . . .  In sum, there is insufficient evidence to establish that jail officials acted with deliberate indifference.") (emphasis added).

Further in this regard, the Pleadings indicate that the only information Loverme had about Plaintiff's medical condition was what Plaintiff told him.  However, Loverme was not required to credit Plaintiff's statement, particularly considering that it arose in the

context of a discussion about the conditions of Plaintiff's confinement, namely, Plaintiff was unhappy about a window being open because it was letting in fumes from the generator.[10]

Nevertheless, Plaintiff now contends that Loverme should have known that Plaintiff had been diagnosed with a seizure disorder since that information was in Plaintiff's inmate file.[11]  However, even assuming that such information was in Plaintiff's file, Plaintiff has not plausibly alleged that Loverme was aware of Plaintiff's diagnosis.  Nor, does Plaintiff allege that he was receiving any particular prescribed medications or ongoing treatment for seizures at the time of the incident, of which Loverme would have been aware.[12]  Consequently, the fact that Loverme did not immediately summon medical help in response to Plaintiff's bare assertion that he might have a seizure is not indicative of deliberate indifference.[13]

Additionally, the allegations regarding the duration of Loverme's alleged delay of treatment do not plausibly suggest deliberate indifference.  On this point, the pleading

---

[10] Plaintiff does not suggest that the smell of diesel fumes can trigger seizures generally, nor does he allege that any other inmate of the Chautauqua County Jail ever suffered a seizure due to the odor of diesel fumes from the Jail's generator.

[11] ECF No. 13 at p. 10 ("The defendant either knew of the seizures or should've known seeing as they are mentioned in the Plaintiff's inmate file.").

[12] Indeed, Plaintiff contends that Loverme should have provided "medical attention," but fails to explain what "medical attention" he should have provided, other than calling a nurse or a doctor; the Complaint does not indicate what a nurse or doctor could have done if summoned.  *See*, ECF No. 13 at p. 4 ("medical attention should have been provided").

[13] *See, Nottingham v. Richardson*, No. 2:10-CV-0060, 2011 WL 4498865 at *3,19 (N.D. Tex. Sept. 13, 2011) ("Plaintiff alleges on February 1, 2008, he complained of not feeling well and defendant DAVIS came to his cell. Plaintiff says he told DAVIS he thought he was going to have a seizure, and DAVIS "shrugged his shoulders, turned and walked away." Plaintiff says he had a seizure about twenty minutes later. In his December 13, 2010 amended complaint, plaintiff gives a slightly different account of the incident saying that, when he told defendant DAVIS he was having a seizure, DAVIS responded by asking how plaintiff knew and then walked away.  . . .  [Although Plaintiff say he] once either told DAVIS he was having a seizure or said he was going to have a seizure[, he ] does not allege any facts from which defendants could have verified the truthfulness of his statements . . . .  [W]ithout observation of any physical indications of seizure activity, [defendants] cannot be said to have been deliberately indifferent to plaintiff's seizures."), report and recommendation adopted, No. 2:10-CV-0060, 2011 WL 4526133 (N.D. Tex. Sept. 29, 2011), *aff'd*, 499 F. App'x 368 (5th Cir. 2012)

seems to studiously avoid indicating how long Loverme was away from Plaintiff's cell before Plaintiff allegedly suffered the seizure.  Rather, Plaintiff repeatedly states only that it was "an unknown amount of time."[14]  This omission is significant, since even assuming that Plaintiff was unconscious for some portion of the alleged seizure, he would presumably have an estimate of the period in question.  In any event, Plaintiff has not alleged that Loverme was gone for an unreasonable amount of time, and there are no factual allegations from which a reasonable inference can be drawn that Loverme was gone for an unreasonable length of time, all of which further detracts from the plausibility of Plaintiff's claim.

For all of these reasons, the Court concludes that the 14th Amendment medical claim is not plausibly pleaded and must be dismissed.

Failure to Protect

Plaintiff maintains that Loverme and Slate failed to protect him from an attack by a fellow inmate on October 30, 2017.  The principles applicable to such a claim are clear:

> The Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). "In particular, a prison official has a duty to protect prisoners from violence from other prisoners." *Nunez v. Goord*, 172 F. Supp. 2d 417, 430 (S.D.N.Y. 2001). However, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer,* 511 U.S. at 834. A prison official's failure to protect is a Fourteenth Amendment violation only "where the officer acted with 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Rosen v. City of N.Y.*, 667 F. Supp. 2d 355, 360–61 (S.D.N.Y. 2009) (quoting *Farmer*, 511 U.S. at 828).

The two-pronged framework for claims of deliberate indifference set forth in

---

[14] ECF No. 1 at p. 12; ECF No. 13 at p. 6.  In his response to Defendants' motion, Plaintiff refers to this period as "an extended period of time," but again without any quantification. ECF No. 13 at p. 9.

> *Darnell* [*v. Pineiro*] "applies with equal measure to failure to protect claims."
> *Taylor v. City of N.Y.,* No. 16 Civ. 7857, 2018 WL 1737626, at *12 (S.D.N.Y.
> Mar. 27, 2018). A plaintiff must therefore show "(1) that the failure to
> intervene or protect the inmate was sufficiently serious such that it caused
> an unquestioned and serious deprivation of basic human needs and (2) that
> the defendant acted with a sufficiently culpable state of mind." *Corley v. City
> of N.Y.*, No. 14 Civ. 3202, 2017 WL 4357662, at *12 (S.D.N.Y. Sept. 28,
> 2017) (internal quotation marks and citation omitted). The second prong is
> measured by an objective standard: whether a defendant "knew, or should
> have known" that his or her conduct "posed an excessive risk to health or
> safety." *Darnell*, 849 F.3d at 33, 35.

*Luckey v. Jonas*, No. 18CIV8103ATKNF, 2019 WL 4194297, at *3–4 (S.D.N.Y. Sept. 4, 2019).

Here, Plaintiff has failed to plausibly plead either prong of a failure-to-protect claim. To begin with, the Complaint does not plausibly allege that when Loverme and Slate took Plaintiff to an A.A. meeting on October 30, 2017, they placed him in a situation that objectively posed a substantial risk of serious harm to Plaintiff from assault by a fellow inmate. In this regard, the Complaint merely alleges that on September 22, 2017, Kamholtz and another inmate assaulted Plaintiff; that Plaintiff requested a keep-away order from Kamholtz; and that on October 30, 2017 Plaintiff was allowed to be in the same room with Kamholtz at an A.A. meeting. There is no allegation, for example, that after the incident on September 22, 2017, Kamholtz had threatened further harm to Plaintiff. Nor does Plaintiff claim that he was in continuing danger from Kamholtz because the two were members of rival gangs; indeed, although the Complaint alleges that Kamholtz was a member of the Bloods gang, Plaintiff asserts that he is not a gang member and has never been affiliated with a gang.[15] Consequently, Plaintiff offers no reason why

---

[15] ECF No. 1 at p. 10. The Complaint implies that the assault of Plaintiff on September 22, 2017 was somehow gang related. However, in light of Plaintiff's subsequent strenuous assertion that he has no

Kamholtz would have wanted to harm him on October 30, 2017.

More importantly, Plaintiff's own submissions fail to plausibly allege that Plaintiff was actually in danger from Kamholtz at the A.A. meeting.  In this regard, at one point the Complaint alleges, in conclusory fashion, that at the A.A. meeting Kamholtz "attacked" Plaintiff.[16]  However, the Complaint does not allege any details of the supposed "attack," nor does it claim that Plaintiff suffered any physical injury from Kahmholtz.  Rather, the Complaint clearly indicates that it was Plaintiff who attacked Kamholtz at the A.A. meeting.  In this regard, the written statement by Jail Administrator Crowell, which is attached to the Complaint, refers to an admission by Plaintiff that he made a preemptive attack against Kamholtz because he felt outnumbered.  Crowell further observes that "no others intervened on either behalf" in the altercation, and that Plaintiff had the opportunity to alert corrections officers to the situation before the incident occurred.[17]  This description by Crowell is supported by Plaintiff's acknowledgement that he was prosecuted for assaulting Kamholtz at the A.A. meeting.  Indeed, the damages that Plaintiff is seeking for this claim all pertain either to a hand injury (not mentioned in the Complaint) that Plaintiff evidently sustained while hitting Kamholtz,[18] or to the legal consequences that Plaintiff sustained after being prosecuted for assaulting Kamholtz.[19]  Accordingly, the Complaint fails to plausibly allege the objective prong of a failure-to-protect claim.

---

gang affiliation, the motive and circumstances of the assault are completely unexplained.

[16] ECF No. 1 at p. 19.

[17] ECF No. 1 at p. 14.

[18] ECF No. 13 at p. 11.

[19] For example, as and for damages related to this claim, Plaintiff demands that the "Assault 2nd" charge against him be dismissed, since, in his mind, Loverme and Slate were to blame for this criminal charge since they placed him in a setting where he felt that he needed to assault Kamholtz. ECF No. 1 at p. 6. (Referring to "the Assault 2d I received *as a result of them violating my rights*.") (emphasis added).  On this same point, in his response to Defendants' motion, Plaintiff states that he "received a 2–4 year prison sentence" not because of his own actions, but because of "Officer Loverme's and Officer Slate's malicious attempt to get the Plaintiff assaulted." ECF No. 13 at p. 12 (emphasis added).

Furthermore, and alternatively, the Complaint fails to plausibly allege the second prong of such a claim, which is that Loverme and Slate acted with the requisite deliberate indifference.  In this regard, the Complaint repeatedly refers to Loverme and Slate having "overlooked" the keep away order, which is plainly the language of negligence, not of deliberate indifference.[20]   Indeed, the Complaint gives no indication that Defendants acted intentionally, or even recklessly.

Now, however, in response to Defendants' motion to dismiss, Plaintiff asserts, in conclusory fashion, that Defendants "malicious[ly] attempt[ed] to get the Plaintiff assaulted."[21] As support for this statement, Plaintiff indicates only that the keep-away order would have been on file at the jail, and thus would have been "well known."[22] Alternatively, Plaintiff posits that Loverme might have had a motive to place him in danger because of the interaction between the two on  September 5, 2017, when Plaintiff allegedly had a seizure:

> *It would not be far-fetched to assume* that since the Plaintiff and the Defendant Officer Loverme, had previous history due to the medical deliberate indifference that Defendant Officer Loverme subject[ed] the Plaintiff to that resulted in a grievance and a lawsuit claim, that not only would the Defendant know exactly who the Plaintiff is, but would *possibly* have a personal vendetta against him and would purposely neglect a keep-away in an attempt to have him assaulted again.

ECF No 13 at p. 10.  However, these statements are expressly speculative, and fail to plausibly allege that Loverme and Slate were anything other than negligent. Consequently, the Court finds that Plaintiff has not plausibly alleged the "deliberate

---

[20] *See*, ECF No. 1 at pp. 5 ("overlooked"); *see also id.* at p. 6 ("Officer Slate and Officer Loverme overlooked my keep away on October 30th 2017, placing me in danger from someone who had previously assaulted me.").
[21] ECF No. 13 at p. 12.
[22] ECF No. 13 at p. 5.

indifference prong" of his failure-to-protect claim.

> Further Leave to Amend Has Not Been Requested and Would Not Be Appropriate in Any Event

The Court is mindful that "[a] *pro se* complaint is to be read liberally, and should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Jackson v. Wells Fargo Home Mortg.*, No. 19-1446-CV, 2020 WL 1970528 (2d Cir. Apr. 24, 2020) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). Here, for the reasons discussed above the Court does not believe that Plaintiff can, consistent with Rule 11, amend his complaint to state actionable claims.

## CONCLUSION

Defendants' motion to dismiss (ECF No. 10) is granted and this action is dismissed with prejudice. The Clerk is directed to close this action. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: Rochester, New York
     May  20, 2020

ENTER:

CHARLES J. SIRAGUSA
United States District Judge